GUNTER v. MERCHANT et al. (No. 5404.)

(Court of Civil Appeals of Texas. Austin. Feb. 10, 1915.)

On motion for second rehearing. Overruled.

For former opinions, see 172 S. W. 191.

KEY, C. J. In this case counsel for appellant have been permitted to file and submit a second motion for rehearing, in order that this court might re-examine some of the propositions insisted upon by appellant. The re-examination has been made; and, after applying to the case all the ability, knowledge, and discrimination possessed by this court, we are still of opinion that no grounds for reversal have been shown, and that the case should stand affirmed, as held in our former opinions.

The controlling question involves the construction of article 4982 of the Revised Statutes, and its application to the facts of this case. That article prescribes that, when usurious interest has been "received or collected upon any contract, either written or verbal," the person paying same or his legal representatives may, by action of debt, recover double the amount so paid and received. That statute was enacted by the authority and in pursuance of a provision of our state Constitution which declares that all contracts for a greater rate of interest than 10 per cent. per annum shall be deemed usurious, and that the Legislature shall provide appropriate pains and penalties to prevent the same; and in construing the statute we should keep steadily in view the constitutional object which the Legislature had in mind, and the duty placed upon the Legislature by the Constitution itself to enact laws in aid of that constitutional provision.

Furthermore, and in addition to the considerations referred to, in construing this or any other statute, it should always be remembered that the Legislature itself has prescribed a rule of construction which it is the duty of the courts to observe. By section 3 of the final title, the Legislature has repealed or abrogated the common-law rule of construction to the effect that statutes in derogation of the common law shall be strictly construed, and has. expressly declared that the rule of construction referred to shall have no application to the Revised Statutes, and that the provisions of the latter shall be liberally construed, with the view to effect their objects and to promote justice. This statute does not except penal statutes, or any others—is so broad in its terms as to render it manifest that it was intended to include each and every section and provision of the Revised Statutes, and therefore we can find no excuse for reading into it any exception. With these observations, let us apply that rule of construction to article 4982.

What was the object of the Legislature in enacting that article? The answer seems manifest that the object was to prevent the enforcement of usurious contracts. Now, such being the object, what did the Legislature mean when it used the language "usurious interest received or collected upon any contract"? Cannot a party receive or collect interest without the other party's actually delivering to him a given amount of money in payment of the interest? Most assuredly he can, for interest, like any other debt, can be paid by delivery of a bank check or of any other property which the creditor is willing to accept as the equivalent of money, or by an agreement to offset one debt against another. Now, let us apply these rules of law to the transactions involved in this case, as disclosed by the appellant's own testimony. On cross-examination he testified:

"The Merchant & McConnell note is for $8,-000. I loaned them $8,000. I did not let them

have that much. I gave them a check for $7,-200; there is the check. I took out the $800, because I wanted to have the interest in advance out of the note, and I took the interest out of the $8,000. I took the $800 out of the $8,000 note at the time this transaction was closed up; that was the contract between me and them, and that was for the interest on the $8,000."

So it appears from his own testimony that, while the note was given for $8,000, the agreement was that he was to be paid at that time $800 as interest for one year; and, instead of paying to the makers of the note the full sum of $8,000, he paid them $7,200 and retained $800 in payment of interest. In other words, the result was just the same as it would have been if he had paid to the makers of the note the full sum of $8,000, and they had taken $800 thereof and handed it back to him in payment of interest. Now, if this latter course had been pursued, counsel for appellant would not insist that he had not been paid and had not collected the interest at the time of the transaction; but the only difference between that and what did occur is the fact that, instead of paying to the makers of the note the full sum of $8,000, he paid them $7,200, and retained the $800, which they would have then and there paid back to him as interest if he had delivered it to them. To give to article 4982 a construction so narrow and restricted as to exclude this transaction from its terms would, in our opinion, constitute a disregard of the rule of construction prescribed by the Legislature; and such a construction, instead of tending to effect the legislative purpose, would tend to thwart that purpose.

As to the other item of interest, consisting of $400 paid to Miss Talbert for the benefit of appellant, that payment was made at the time the note was signed by a check drawn by the makers of the note, and it is immaterial whether the check was delivered to appellant in person or to Miss Talbert for his benefit, because in either event it was a payment of interest, and therefore a collection of interest at the time referred to.

As to the failure of the court to allow appellant any recovery as attorney's fees, we deem it sufficient to say that the court submitted to the jury a special issue, which required them to find whether or not appellant placed the note in the hands of an attorney for collection, or to have the deed of trust foreclosed, and the jury found that it was placed in the attorney's hands for the latter purpose, and appellant not only failed to except to the action of the court in submitting those issues to the jury, but failed to ask the court to set aside that special finding of the jury. It is true that the record contains a document which purports to be appellant's exceptions to the court's charge, and one of which asserts that the issue referred to should not have been submitted to the jury, for the reason that the undisputed evidence showed that appellant had placed the note in the hands of an attorney for collection, etc.; but the record does not show that the document referred to was ever submitted to the trial judge, nor does it show that appellant reserved any bill of exception to any portion of the court's charge. This being the case, appellant must be held to have acquiesced in and consented to the charge of the court as given, and, as he failed in his motion for new trial to ask the court to set aside the finding of the jury in that regard, the trial court properly disposed of the case upon the theory that the note had not been placed in the hands of an attorney for collection, otherwise than by foreclosure of the deed of trust. But if a different course had been pursued, and we were required to pass upon the action of the jury in the finding made, we would be compelled to hold that it is sustained by testimony. On cross-examination appellant testified that he turned the note over to Mr. Autry to have a sale of the property made; that he told him to advertise it and sell it; that he turned it over to him because he wanted him to collect the money and make a sale of the property under the deed of trust. He further stated that the note was secured by a deed of trust with R. Wilbur Brown as trustee. He first said Brown did not decline to act, then said he did not think he asked him to act, and, if he did, he did not remember it. He said:

"I know I turned it over to Mr. Autry in place of R. Wilbur Brown. Mr. Brown didn't sell it, and I don't recollect just how the transaction was; but there was some kind of transaction about it someway. * * * I don't remember when Mr. Autry was appointed trustee to make the sale under the deed of trust. I turned it over to him, and the note, and told him; and he was to have 10 per cent., what the note calls for. I don't know that I ever read that deed of trust, and don't know what commission it calls for. I don't know whether I turned it over to him to get the commission called for in the deed of trust or not."

We think that testimony, although in conflict with other testimony given by appellant, amply supports the finding of the jury that the note was delivered to Mr. Autry for a foreclosure under the deed of trust, and also indicates that Mr. Autry, as substitute trustee, sold the mortgaged property in pursuance of the deed of trust.

Motion overruled.